# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

WESTERN WATERSHEDS PROJECT,

                Plaintiff,

     vs.

DEB HAALAND, *et al.*,

                Defendants.

Case No.: 2:23-cv-02009-GMN-EJY

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 45), filed by Defendant Clark County. Plaintiff Western Watersheds Project filed a Response, (ECF No. 51), and Clark County filed a Reply, (ECF No. 53). Also before the Court is the Motion to Dismiss, (ECF No. 46), filed by Deb Haaland, in her official capacity as the Secretary of the Interior, and the Fish and Wildlife Service (collectively "Federal Defendants"). Plaintiff filed a Response, (ECF No. 52), to which the Federal Defendants filed a Reply, (ECF No. 54). Further pending before the Court is the Motion for Leave to File Notice of Supplemental Authority, (ECF No. 55), filed by the Federal Defendants. Plaintiff filed a Response, (ECF No. 56). A hearing was held on March 6, 2025, and all parties addressed the Court, (ECF No. 61).

For the reasons discussed below, the Court GRANTS, in part, and DENIES, in part, the Federal Defendants' Motion to Dismiss. The Court also GRANTS Clark County's Motion to Dismiss and the Federal Defendants' Motion for Leave to File Notice of Supplemental Authority.

## I.    STATUTORY BACKGROUND

This case involves requirements imposed by the Endangered Species Act ("ESA"), an environmental law enacted in 1973 that aimed "to provide a means whereby the ecosystems

upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b).  The Supreme Court has described the ESA as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).  "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Id.* at 184.

To receive the protection of the ESA, a species must be listed as "endangered" or "threatened" by the Secretary of the Interior. 16 U.S.C. § 1533.  Once a species is listed, the ESA contains both substantive and procedural requirements designed to carry out its goal of conserving endangered and threatened species and the ecosystems on which they depend. *See, e.g.*, *id.* §§ 1538, 1536.  Three interlocking provisions of the ESA are relevant in this case: Section 9, which prohibits the "take" of any members of an endangered or threatened species, 16 U.S.C. § 1538(a)(1)(B); Section 10, which authorizes the issuance of incidental take permits, *id.* § 1539(a); and Section 7, which imposes upon federal agencies an "affirmative duty to prevent violations of Section 9." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1238 (9th Cir. 2001) (citing 16 U.S.C. § 1536(a)(2)).

Under Section 9 of the ESA, it is unlawful for any person to "take" a species that has been listed as endangered, subject to specific exceptions. 16 U.S.C § 1538(a)(1)(B).  This prohibition has also been extended to species listed as "threatened." *Id.* § 1533(d); *see* 50 C.F.R. § 17.31(a) (extending take prohibition to species listed as threatened prior to September 26, 2019, including the Mojave desert tortoise).  "Take" is defined as harming, harassing, wounding, killing, trapping, capturing, or collecting a listed species, and "harm" has been defined to include "significant habitat modification or degradation" that "actually kills or injures wildlife." 50 C.F.R. § 17.3; *see Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687 (1995).  Section 10 of the ESA authorizes the Fish and Wildlife Service ("FWS") to issue a permit allowing a private individual to take a listed species despite the

1
2
3
4

prohibition in Section 9 "if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B).  This "Incidental Take Permit" may be issued only if the applicant submits a habitat conservation plan that meets certain statutory requirements. *Id.* § 1539(a)(2).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Section 7 of the ESA requires federal agencies, in consultation with the FWS, to ensure that any action "authorized, funded, or carried out" by the agency is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of the critical habitat of the species. 16 U.S.C. § 1536(a)(2).  If an agency action "will likely affect" endangered or threatened species and their protected habitats, the "action agency," or agency preforming the potentially harmful action, "shall consult" with the designated federal wildlife services.[1] *See id.* § 1536(a)–(d); 50 C.F.R. § 402.14(a) ("Each Federal agency shall review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat.").  Formal consultation results in the FWS preparing a "biological opinion" that assesses how the agency action would affect the relevant species and habitats. *See* 16 U.S.C. § 1536(b); *see generally* 50 C.F.R. § 402.14(h)(1)(iv) (describing the contents of a biological opinion).  If the FWS concludes that an action will not likely jeopardize a listed species or critical habitat, the biological opinion includes an "incidental take statement" outlining the permitted impact and defining a "prohibited taking." 50 C.F.R. § 402.14(i).

20
21
22

When an agency retains discretion over an action, an agency must reinitiate consultation in two circumstances relevant here: (1) when "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously

23
24
25

---

[1] The federal wildlife services charged with implementing the ESA are the FWS, a division within the U.S. Department of the Interior, and National Marine Fisheries Service ("NMFS"), a division of the U.S. Department of Commerce. 16 U.S.C § 1532(15) (defining the federal wildlife services).  Because all species covered under the Multiple Species Habitat Conservation Plan that is the subject of this case fall under the responsibility of the FWS, the Court only discusses the FWS in this Order.

considered," and (2) "[i]f the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion." 50 C.F.R. § 402.16(a).

## II.    FACTUAL BACKGROUND

This case arises out of the significant population decline of the Mojave desert tortoise in the area surrounding Las Vegas. (*See generally* FAC, ECF No. 41).  Plaintiff Western Watershed Projects is a nonprofit organization dedicated to protecting public lands and natural resources of watersheds in the American West. (*Id.* ¶ 19).  Plaintiff brings this case against the FWS, Deb Haaland in her official capacity as Secretary of the Interior, and Clark County for violations of the Endangered Species Act related to the population decline of the Mojave desert tortoise. (*See generally id.*).

The Mojave desert tortoise was listed as threatened under the Endangered Species Act ("ESA") in 1990. (*Id.* ¶ 1).  Once the tortoise was listed as threatened, Clark County could not lawfully carry out actions that would cause "take" of the Mojave desert tortoise, including authorizing development on non-federal lands, without an Incidental Take Permit ("ITP"). (*Id.* ¶ 54).  In 2000, Clark County, Nevada, along with other municipalities and entities, adopted the Clark County Multi-Species Habitat Conservation Plan ("MSHCP") to protect the Mojave desert tortoise and other species while allowing development on non-federal lands without incurring liability for unlawful "take" under the ESA. (*Id.* ¶¶ 1, 57).[2]  The MSHCP was adopted to support their application for an ITP. (*Id.* ¶ 1).  The parties involved signed the MSHCP Implementing Agreement, which binds them to implement the MSHCP. (*Id.* ¶¶ 2, 59).

---

[2] The signatories to the MSHCP Implementing Agreement are: Clark County, City of Las Vegas, City of North Las Vegas, City of Henderson, City of Boulder City, FWS, National Pask Service, Bureau of Land Management, Department of the Interior, Nevada Division of Wildlife, and Nevada Department of Transportation. (Compl. ¶ 2).

The FWS issued a Biological Opinion based on its review of the MSHCP and associated ITP application. (*Id.* ¶ 3). The Biological Opinion concluded that the authorized take proposed in the MSHCP would not jeopardize the continued existence of the listed species. (*Id.*). Included in the Biological Opinion was an Incidental Take Statement ("ITS"), which included all conservation measures described in the MSHCP, together with the terms and conditions described in the ITP and the MSHCP Implementing Agreement. (*Id.*). The Biological Opinion specifically provides that "[i]f the Applicants fail to adhere to these terms and conditions, the protective coverage of the Permit and section 7(o)(2) may lapse." (*Id.*). Based on the Biological Opinion, the ITS, and the MSHCP and its Implementing Agreement, the FWS issued an ITP to Clark County and other entities. (*Id.*).

The 2001 ITP was intended to remain in effect for 30 years. (*Id.* ¶ 60). Just six years after the issuance of the ITP, more than 45% of the authorized take had already occurred. (*Id.*). The FWS formally proposed an amendment to the MSHCP in 2009, but that process was never completed. (*Id.*). The 2001 MSHCP, Biological Opinion, ITS, and ITP are still in effect, and development under the ITP is ongoing. (*Id.* ¶ 61).

The ITP issued by the FWS allows for "take" of Mojave desert tortoise and other species, as well as their habitats, during development of 145,000 acres of non-federal lands, so long as specific conservation measures are implemented. (*Id.* ¶ 4). The MSHCP, Biological Opinion, and ITP concluded that adjacent federal lands would serve as species habitat for the Mojave desert tortoise taken from the land being developed, which would allow for habitat connectivity and act as a buffer for lands with more intensive use. (*Id.*). The conservation measures outlined in the MSHCP, Biological Opinion, and the ITP require closing nearly all of the new habitat planning area to livestock grazing, including the Gold Butte Areas of Critical Environmental Concern ("ACECs"). (*Id.*).

Plaintiff asserts that the conservation measures in the MSHCP, Biological Opinion, and ITP have not been carried out. (*Id.* ¶¶ 5–9).  First, the promised closure of the Gold Butte ACECs to grazing has not occurred, and the resulting illegal cattle grazing has compromised the lands' value as a viable habitat. (*Id.* ¶¶ 5, 63).  Next, the MSHCP and Biological Opinion assume that federal lands would continue to serve as wildlife habitat, but large portions of that land are either proposed or approved for large-scale solar development. (*Id.* ¶¶ 6, 68, 76–78).  The Bureau of Land Management has recently approved at least four large solar developments spanning more than 13,000 acres within lands covered or partially covered by the MSHCP. (*Id.* ¶ 6).  Plaintiff further alleges that a 2014 legislative amendment added an additional 22,650 acres of additional take coverage on top of the original 145,000 acres in the MSHCP. (*Id.* ¶¶ 8, 60).  Lastly, the Mojave desert tortoise populations have dropped significantly since 2001. (*Id.* ¶ 9).  By 2014, three of the five Mojave desert tortoise Recovery Units fell below the minimum viable population density threshold necessary to avoid extinction, and the decline has continued since 2014. (*Id.*).  Despite this, the FWS has not reinitiated consultation per ESA Section 7. (*Id.* ¶ 8).

On December 1, 2022, Plaintiff sent the required letter notifying Defendants of its intent to sue for alleged violations of the ESA relating to the MSHCP. (Dec. 1, 2022, Notice Letter, Ex. C to Federal Defendants' Mot. Dismiss ("Fed. MTD"), ECF No. 46-1).  On June 2, 2023, Plaintiff sent an amended Notice of Intent to Sue letter. (FAC ¶ 14) (June 2, 2023, Notice Letter, Ex. D to Fed. MTD, ECF No. 46-4).  Plaintiff filed its Complaint on September 14, 2023, in the United States District Court in the District of Colombia. (Compl., ECF No. 1).  The case was transferred to the District of Nevada on November 22, 2023. (Order Transferring Case, ECF No. 20).  After the Federal Defendants filed a Motion to Dismiss Plaintiff's original Complaint, (ECF No. 34), Plaintiff filed its Amended Complaint. (FAC, ECF No. 41).  The

Federal Defendants and Clark County now move to dismiss the Amended Complaint. (ECF Nos. 45, 46).

### III.    LEGAL STANDARD

#### A.  12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Federal courts have jurisdiction over claims against the United States only to the extent that sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  "As a sovereign, the United States is immune from suit without its consent, and the terms of its consent when granted define and circumscribe our jurisdiction." *Nexovic v. U.S.*, 71 F.3d 776, 777–78 (9th Cir. 1995) (citing *United States v. Dalm*, 494 U.S. 596, 608 (1990)).  "The applicable statute of limitations is a term of consent. The failure to sue the United States within the period of limitations is not simply a waivable defense; it deprives the district court of jurisdiction to entertain the action." *Id.* (quoting *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990)).

#### B.  12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

1   face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A

2   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

3   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This

4   standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

5       If the court grants a motion to dismiss for failure to state a claim, leave to amend should

6   be granted unless it is clear that the deficiencies of the complaint cannot be cured by

7   amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant

8   to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in

9   the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

10  movant, repeated failure to cure deficiencies by amendments previously allowed, undue

11  prejudice to the opposing party by virtue of allowance of the amendment, futility of

12  amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

13  **I.**     **DISCUSSION**

14      The Federal Defendants move to dismiss all or part of each of Plaintiff's claims against

15  them. (*See generally* Fed. MTD, ECF No. 46).  Clark County moves to dismiss all of Plaintiff's

16  claims.[3] (*See generally* Clark County Mot. Dismiss ("Clark County MTD"), ECF No. 45).  The

17  Court addresses the arguments for dismissal of each of Plaintiff's claims in turn.

18      **A.  Claim One: FWS's Failure to Reinitiate Consultation**

19      Plaintiff challenges the FWS's failure to reinitiate consultation on the MSHCP under

20  Section 7 of the ESA in light of four separate triggering events: (1) trespass cattle grazing in the

---

[3] Clark County moves to dismiss all three of Plaintiff's claims, but only Plaintiff's third claim is brought against Clark County. (*See generally* FAC).  Plaintiff's first two claims are only asserted against the FWS and Deb Haaland. (FAC ¶¶ 82–91).  Thus, Clark County does not have standing to seek dismissal of Plaintiff's first two claims. *See Mantin v. Broad. Music, Inc.*, 248 F.2d 530, 531 (9th Cir. 1957) ("[T]he moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants.").  The Court therefore only considers the arguments made by the Federal Defendants on the first two claims and considers Clark County's arguments for dismissal of Plaintiff's third claim.

Gold Butte ACECs and Gold Butte National Monument that compromises those lands' habitat value for the Mojave desert tortoise, (2) the new threat to Mojave desert tortoise from large-scale solar development on federal lands that was not considered or anticipated by the MSHCP, (3) the dramatic population decline of the Mojave desert tortoise, and (4) the addition of 22,650 acres to the ITP by a 2014 legislative amendment.

Plaintiff asserts that the FWS retained discretion to modify or suspend the ITP, and thus was required to reinitiate consultation when each of the four triggers occurred or came to be. (FAC ¶ 83). The Federal Defendants move to dismiss Plaintiff's first claim because it is barred by the statute of limitations.[4] Section 2401(a) provides a general statute of limitations in actions brought against the federal government when no express limitations period appears in the statute. 28 U.S.C. § 2401(a). Claims raised under the ESA are subject to the Administrative Procedure Act's ("APA") general six-year statute of limitations. *See Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1078 (9th Cir. 2017). The Federal Defendants argue that Plaintiff's failure-to-reinitiate-consultation claim first accrues when the act triggering the duty to reinitiate occurred and the plaintiff could have brought suit. (Fed. MTD 10:4–12). Defendants assert that each of the bases for Plaintiff's Section 7 claim fall outside of the six-year statute of limitations: trespass cattle grazing in the Gold Butte area has been occurring since at least 2012, the data Plaintiff relies on for the declining population of the tortoise appears to be from 2014 and earlier, and the legislative amendment happened in 2014. (*Id.* 10:15–11:13). Finally, though they contend that Plaintiff does not identify with specificity

---

[4] The Federal Defendants made two 12(b)(1) arguments for dismissal of the 2014 legislative amendment basis for Plaintiff's first claim: (1) that a portion of the first claim is jurisdictionally barred for insufficient notice, and (2) that the violations occurred outside of the statute of limitations. Since the parties concluded their briefing, the Ninth Circuit held that the ESA's notice requirement is a "mandatory claims-processing rule, not a jurisdictional predicate." *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1153 (9th Cir. 2024). Because the citizen suit requirement is no longer a jurisdictional requirement, the Court must consider the jurisdictional question of the statute of limitations under 12(b)(1) before reaching the insufficiency of notice question under 12(b)(6). But because the Court finds that the 2014 legislative amendment trigger is barred by the statute of limitations, it does not reach the Federal Defendants' arguments for insufficiency of notice.

which solar projects it bases its claims on, Federal Defendants argue that Plaintiff cannot rely on those actions as a trigger for reinitiation if they fall outside of the statute of limitations. (*Id.* 11:13–20).

While Plaintiff does not contest that the six-year statute of limitations applies to ESA Section 7 claims, it instead advances two arguments as to why its claim should not be dismissed as time-barred: (1) it has alleged new information for each trigger than has arisen within the statute of limitations period, and alternatively, (2) the continuing violations doctrine or discrete violations doctrine apply to make each basis for the claim timely. (Resp. 16:1–19:24). Each of the alleged bases for reinitiation must have accrued later than September 14, 2017, six years prior to the filing of the original Complaint in this case. (*See generally* Compl., ECF No. 1). The Court addresses these arguments as they pertain to each trigger in turn.

### i. Trespass Cattle Grazing

Plaintiff first claims that the trespass cattle grazing in the Gold Butte ACECs and Gold Butte National Monument requires the FWS to reinitiate consultation. (FAC ¶¶ 82, 83). Plaintiff does not contest that trespass cattle grazing has been occurring since well before the statute of limitations period in this case. Defendants argue this trigger accrued on the date the cattle grazing began; Plaintiff asks the Court to find that it accrued when new information about the impacts of cattle grazing on the Mojave desert tortoise became available. During the Court's March 2025 hearing, Plaintiff argued that the Court should find that its trespass cattle grazing claim accrued in 2018 because new information about the impacts of the trespass cattle grazing became available in the 2018 Gold Butte Manager's Report. Although Plaintiff did not include information about this report in its FAC, it did attach the 2018 Report to its Notice of Intent to Sue Letter, which the Federal Defendants included as an exhibit to their Motion to Dismiss. (June 2, 2023, Notice of Intent to Sue at 25, Ex. D to Fed. MTD). Because the statute of limitations here is jurisdictional, the Court is not restricted to the face of the pleadings and

1    "may review any evidence . . . to resolve factual disputes concerning the existence of
2    jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  The Court can
3    therefore consider the exhibits attached to the Federal Defendant's MTD, including the Notice
4    of Intent to Sue letters that Plaintiff sent to Defendants.

5        The Court is guided by the Ninth Circuit's recent decision in *Natural Resources Defense
6    Council (NRDC) v. Haaland* in its consideration of Plaintiff's argument.[5] 102 F.4th 1045 (9th
7    Cir. 2024).  In *NRDC v. Haaland*, the court considered whether the reinitiation-of-consultation
8    claim was barred by the statute of limitations. *Id.* at 1054.  The government defendants argued
9    that the failure-to-reinitiate claim was time barred because it arose from the issuance of a 2009
10   biological opinion. *Id.* at 1074.  The court rejected that argument, finding that the failure-to-
11   reinitiate claim survived because Plaintiffs alleged that new information emerged within the
12   statute of limitations period. *Id.* ("To the extent [plaintiff] alleges that this new information
13   falling within the statute-of-limitations period 'reveals effects of the action that may affect
14   listed species or critical habitat in a manner or to an extent not previously considered,'
15   [plaintiff]'s claim is not time barred." (internal citations omitted)).

16       Based on the Ninth Circuit's decision in *NRDC v. Haaland* and the language of the
17   relevant regulation, the Court agrees with Plaintiff that its claim is not time barred to the extent
18   it is based on new information that "reveal[ed] effects of the action that may affect listed
19   species or critical habitat in a manner to an extent not previously considered." 50 C.F.R. §
20   402.16(a)(2).  Though the cattle grazing has been occurring since well before the six-year
21   statute of limitations period, the new information revealed in the 2018 Report acts as its own

_____

[5] The Federal Defendants filed a Motion for Leave to File Notice of Supplemental Authority, informing the
Court about this Ninth Circuit case that was decided after the parties submitted their briefing on this Motion.
(Mot. Leave, ECF No. 55).  Plaintiff did not oppose the Motion, but filed a Response clarifying Federal
Defendants' Notice of Supplemental Authority.  Because Plaintiff does not oppose, and because the Court finds
that the identified supplemental authority is relevant to the Court's decision, the Court GRANTS the Motion for
Leave to File Notice of Supplemental Authority.

trigger that accrued within the statute of limitations period.  Accordingly, the Court allows the trespass cattle grazing claim to proceed on the basis of the new information revealed in the 2018 Gold Butte Manager's Report.

### ii.    Solar Developments

Plaintiff's next trigger is "the new threat to Mojave desert tortoise from large-scale solar development on federal lands that was not considered or anticipated by the MSHCP." (FAC ¶ 82).  Federal Defendants argue that Plaintiff fails to identify with any specificity which solar projects it refers to, and thus likely fails to state a claim. (Fed. MTD 11:13–16).  In the alternative, Defendants contend that any of the solar projects falling outside of the statute of limitations period should be barred. (*Id.* 11:16–20).

Regarding Defendants' failure to state a claim argument, the Court finds that Plaintiff has pled sufficient information to state its failure-to-reinitiate claim on the basis of solar development projects.  In its FAC, Plaintiff states that "vast swaths of the federal lands previously intended to serve as wildlife habitat are now either proposed or approved for large-scale solar developments." (FAC ¶ 6, 76).  It provides the example of four solar developments "recently approved" that allegedly span more than 13,000 acres. (*Id.*).  Plaintiff does specifically identify the "Rough Hat Clark County Solar Project" as a recent proposed project that would destroy approximately 2,400 acres of Mojave desert tortoise habitat, before noting that "at least 12 other proposed and approved solar projects would cover approximately 16,000 acres of federal lands that would otherwise serve as habitat for desert tortoise." (*Id.* ¶ 77).  Because Plaintiff has identified that the basis of its claim are the solar development projects that have been approved in the Mojave desert tortoise habitat, it has provided sufficient information to give Defendant fair notice of its failure-to-reinitiate claim on the basis of solar developments. *See Twombly*, 550 U.S. at 555 ("A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests . . . .").

As for the statute of limitations issue, the Court once again considers items outside of the Complaint to aid in determining whether the Court has jurisdiction over this claim. *See McCarthy*, 850 F.2d at 560.  At the hearing, the parties discussed Table 2 of Plaintiff's Notice of Intent to Sue Letter that Federal Defendants attached to their Motion to Dismiss. (June 2, 2023, Notice of Intent to Sue at 22, Ex. D to Fed. MTD).  Table 2 is entitled "partial list of solar projects in Mojave desert tortoise habitat," and includes solar projects that have received biological opinions or incidental take permits from 2010 to 2021. (*Id.*).  During the hearing, the Federal Defendants argued that the solar developments in the table go back to 2010, so the claim should accrue in 2010 when Plaintiff could have first brought this claim.  But, as Plaintiff pointed out, some portion of these development projects has been approved during the statute of limitations period.  Because those triggers occurred within the statute of limitations period, they are not barred.

Plaintiff also argued at the hearing that new information about the impacts of the solar developments became available through the Fish and Wildlife Service's Mojave Desert Tortoise 5-Year Review issued in 2022.  The information in the 2022 Review falls within the statute of limitations period and "reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered."  As the Court determined in its cattle grazing analysis, to the extent the claim is based on the new information revealed in the 2022 Review, Plaintiff's solar development claim would not be time barred. *See NRDC*, 102 F.4th at 1074.  As with the trespass cattle grazing trigger, the Court finds that this trigger can proceed because the new information about the impacts of solar developments on the Mojave desert tortoise became available within the six-year statute of limitations period.

### iii.    Population Decline of the Mojave Desert Tortoise

Plaintiff also claims that reinitiation was required due to the declining population of the Mojave desert tortoise. (FAC ¶¶ 9, 74, 79).  The Federal Defendants contend that, because

Plaintiff relies primarily on data from 2014 and earlier, this trigger is barred by the statute of limitations. (Fed. MTD 11:12–13). But Plaintiff argues that its claim relies on new information regarding the population decline of the desert tortoise that became available in the Fish and Wildlife Service 2022 Mojave Desert Tortoise 5-Year Review that was attached to its Notice of Intent to Sue Letter. (Resp. Mot. Leave 3:21–27). Because the FWS's 2022 Review provided new information about the population decline within the statute of limitations period, the Court finds that this trigger is not barred by the statute of limitations. Thus, the Court allows this claim to proceed to the extent it relies on population decline data that became available within the statute of limitations period.

### iv.    2014 Legislative Amendment

Lastly, the Federal Defendants argue that the 2014 legislative amendment trigger is barred by the six-year statute of limitations. (Fed. MTD 10:16–22). Plaintiff alleges that the FWS was required to reinitiate consultation due to "the addition of 22,650 acres to the ITP in 2014." (FAC ¶ 82). The legislative amendment was a discrete act that occurred in 2014. This claim therefore accrued when the legislative amendment was passed in 2014, when Plaintiff first could have brought this claim, which is well outside the statute of limitations period here. The Court therefore grants Defendants' Motion to Dismiss as to the legislative amendment trigger. The Court does not grant leave to amend this claim because it is not possible for Plaintiff to bring it within the statute of limitations period.[6]

### v.    Claim One Conclusion

In sum, the Court grants the Federal Defendants' Motion to Dismiss as to Plaintiff's requirement to reinitiate consultation claim stemming from the 2014 legislative amendment. The Court allows the claims stemming from the cattle grazing and population decline to

---

[6] Because the Court dismisses the 2014 legislative amendment basis as barred by the statute of limitations, it does not reach Defendants' argument that Plaintiff provided insufficient notice on this basis.

proceed only to the extent they are based on information that became available within the statute of limitations period. Lastly, the Court also allows the claim stemming from the solar development projects to proceed regarding the solar projects that were approved within the six-year statute of limitations period, and to the extent that the basis for reinitiation is the new information revealed in the 2022 status report. Accordingly, the Court GRANTS, in part, and DENIES, in part, the Federal Defendants' Motion to Dismiss Plaintiff's first claim.

**B. Claim Two: FWS's Reliance on Biological Opinion violates ESA Section 7 and 9**

Plaintiff's second claim asserts that the FWS violated Section 7 and Section 9 of the ESA. It appears to make two arguments as to why the FWS violated each Section. With regards to Section 7, Plaintiff first argues that because the FWS did not reinitiate consultation as it was required to do, the Biological Opinion is invalid. (FAC ¶ 87). Because the FWS cannot rely upon the invalid Biological Opinion to meet its Section 7 obligation to avoid jeopardy to the Mojave desert tortoise, it has violated that obligation. (*Id.* ¶ 88). Second, Plaintiff contends that the FWS's failure to carry out the terms and conditions of the Biological Opinion, ITS, ITP, and IA in a manner that jeopardizes the Mojave desert tortoise and its habitat is a violation of ESA Section 7. (*Id.* ¶ 90). Regarding Section 9, Plaintiff explains that, because the Biological Opinion is invalid, the ITS is also invalid. (*Id.* ¶ 89). And because the FWS has authorized take through the ITP and relied on the ITS to protect it from liability, the invalid ITS renders the FWS's authorization of take a Section 9 violation. (*Id.*). The Court first considers the parties' arguments about Section 7.

**i.    Section 7**

Plaintiff claims that the FWS has violated its substantive duty under ESA Section 7(a)(2) to avoid jeopardy. Section 7(a)(2) provides that a Federal agency must "insure that any action authorized, funded, or carried out by such agency is not likely to jeopardize the continued

existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species. . . .”

The Federal Defendants argue that Plaintiff's Section 7 claim merely rephrases the failure-to-reinitiate claim raised in Claim One. (Fed. MTD 12:1–9). The Court agrees. Plaintiff's first argument is that the FWS violated Section 7 by relying on a Biological Opinion that is invalid. But the Biological Opinion is only invalid because the FWS failed to reinitiate consultation—so Plaintiff is challenging the same lack of action here as it is in its first claim.

And Plaintiff's second argument—that the FWS jeopardized the Mojave desert tortoise and its habitat by failing to ensure that the terms and conditions were carried out—also appears to be a creative rearranging of its failure-to-reinitiate claim. (FAC ¶ 90). Plaintiff's claim that the FWS failed to ensure that the terms and conditions were carried out appears to be based on two circumstances: (1) trespass cattle grazing has been occurring in the Gold Butte area, and (2) solar developments on federal land have been approved in contradiction to the conservation measures contemplated in the MSHCP. (Resp. 22:18–25:5). Those violations of terms and conditions are the same as two of the triggers for reinitiation that Plaintiff identifies in Claim One. If Plaintiff were directly challenging the FWS's failure to enforce the terms and conditions, then the challenge could be distinct from the failure to reinitiate claim. But Plaintiff explicitly says that it is not challenging the FWS's failure to enforce the terms and conditions of the MSHCP. (Resp. 27:17–19). If this claim is not challenging the failure to enforce, it can only boil down to the same issue that Plaintiff is targeting in Claim One: the FWS failed to reinitiate consultation in response to these alleged modifications to the MSHCP and Biological Opinion. Thus, the Court agrees that the Section 7 violation alleged in Claim Two is a rephrasing of Claim One, and therefore dismisses this portion of Claim Two as duplicative. This deficiency cannot be corrected because the duplicative nature is inherent to the claim. Thus, the Court does not grant leave to amend this portion of Plaintiff's second claim.

1

2    ii.  **Section 9**

3    The Federal Defendants next challenge the Section 9 violation portion of Claim Two,

4 asserting that Plaintiff does not state a plausible claim for relief. To plead a claim under ESA

5 Section 9, Plaintiff must allege that the FWS has committed a take or caused someone else to

6 commit a take of a protected species. 16 U.S.C. § 1538(a). Defendants first argue that the FWS

7 has not authorized any take that violates the terms and conditions of the ITS or ITP. (Fed. MTD

8 14:27–15:15). To support this argument, the Federal Defendants point to the language in the

9 ITP stating that "[a]ll activities authorized herein must be carried out in accord with and for the

10 purposes described in the application submitted. Continued validity, or renewal, of this permit

11 is subject to complete and timely compliance with all applicable conditions." (ITP at 3, Ex. B to

12 Fed. MTD, ECF No. 46-2). The Federal Defendants also rely on the language in the Biological

13 Opinion, which states that all "terms and conditions are non-discretionary and must be

14 undertaken for the exemptions under section 10(a)(1)(B) and section 7(o)(2) of the [ESA] to

15 apply." (Biological Opinion at 210, Ex. A to Fed. MTD, ECF No. 46-1). Defendant asserts

16 that, to the extent take is occurring due to activities that do not comply with the ITP, that take is

17 not covered by the ITP and is therefore not proximately caused by the FWS's issuance of the

18 ITP. (Fed. MTD 15:13–15).

19    If Plaintiff is challenging actions taken by others that do not comply with the ITP, the

20 Court agrees with Defendants that such take has not been authorized by the FWS. Per the

21 documents themselves, any take that is not in compliance with the MSHCP, ITP, and ITS is not

22 authorized by the FWS. (*See* ITP at 3, Ex. B to Fed. MTD); (*see also* Biological Opinion at

23 210, Ex. A to Fed. MTD). Thus, it cannot be said that the FWS caused any take that is not

24 authorized by the ITP. And if the FWS did not cause the take, it cannot be liable for that take

25 under Section 9. *See Babbitt v. Sweet Home Chapter of Comtys. for a Great Or.*, 515 U.S. 687,

696 n.9, 700 n.13 (1995); *San Luis Obispo Coastkeeper v. Santa Maria Valley Water*

1     *Conservation Dist.*, 49 F.4th 1242, 1246 (9th Cir. 2022) ("An ESA § 9 claim cannot succeed

2  unless the agency's conduct is the proximate cause of the alleged take.").

3         But Plaintiff appears to challenge *all* take that has occurred since the Biological Opinion

4  and ITS have been allegedly invalid, whether it was compliant with the ITP or not.  The crux of

5  the issue here is therefore whether the Biological Opinion was automatically rendered invalid

6  when the FWS failed to reinitiate consultation as it was required to.  Citing the Ninth Circuit in

7  *Center for Biological Diversity v. U.S. Bureau of Land Management*, 698 F.3d 1101, 1115 (9th

8  Cir. 2012), Plaintiff asserts that the Biological Opinion was automatically rendered invalid

9  when the FWS failed to reinitiate consultation when such reinitiation was required. (FAC ¶ 87).

10 In that case, the Ninth Circuit explained the Section 7 reinitiation of consultation requirement

11 and process. *See Ctr. for Biological Diversity*, 698 F.3d at 1108.  The Court stated that "[w]hen

12 reinitiation of consultation is required, the original biological opinion loses its validity, as does

13 its accompanying incidental take statement, which then no longer shields the action agency

14 from penalties for takings. *Id.*

15        The Federal Defendants respond that the statement in *Center for Biological Diversity* is

16 dicta because the case did not involve reinitiation of consultation. 698 F.3d at 1101; (Fed. MTD

17 18:26–28).  In that case, the Ninth Circuit ruled that a biological opinion and accompanying

18 ITS were arbitrary and capricious and in violation of the consultation requirements of Section

19 7. *See generally id.*  The statement Plaintiff relies on is in the background section of the

20 Opinion, in which the court explained the ESA statutory scheme. *Id.*  The court then reiterated

21 the statement in its analysis, when it described how the "ESA's sequential, interlocking

22 procedural provisions ensure recourse if the parties do not honor or enforce [conservation

23 agreements]." *Id.* at 1115.  But the challenge in *Center for Biological Diversity* was not about

24 an agency's failure to reinitiate; rather, the plaintiff was challenging the biological opinion and

25 ITS that resulted from the formal consultation process. *See generally id.*  The Ninth Circuit did

not invalidate the Biological Opinion or ITS in *Center for Biological Diversity*, nor did it decide anything regarding an agency's failure to reinitiate, so the Court agrees with the Federal Defendants that the statement Plaintiff relies on is dicta.[7]

Plaintiff points to *Friends of the Clearwater v. United States Forest Service* as an example of a court applying the statement from *Center for Biological Diversity* in the way the Plaintiff asks the Court to do here. No. 3:20-CV-00322-BLW, 2021 WL 3408595, at *9 (D. Idaho Aug. 4, 2021). There, the district court found that a Biological Opinion and ITS were no longer valid because the Court had determined that reinitiation of consultation was required and not carried out. *Id.* Other than this unpublished district court case, Plaintiff does not identify, and the Court has not found, any other cases that relied on the Ninth Circuit's statement in *Center for Biological Diversity* to find that a biological opinion is automatically invalid at the moment reinitiation is required and not carried out.

Defendants argue that Plaintiff is attempting to "short-cut this entire judicial and administrative process." (Fed. MTD 19:8–9). They assert that there are several steps that must occur before the ITS would lose its legal force and expose those who have relied on it to liability. (*Id.* 18:1–3). The proper process, as Defendants describe it, is for the Court to first rule on the merits of the claim that the FWS failed to reinitiate. (*Id.* 18:3–5). If the failure to reinitiate claim succeeds on the merits, the Court would likely order the agency to reinitiate consultation, which would restrict agencies and permit applicants from making an "irreversible or irretrievable commitment of resources." (*Id.* 18:5–10) (quoting 16 U.S.C. § 1536(d)). Even if the Court finds that Plaintiff succeeds on its failure-to-reinitiate claim, Defendants insist that the Court would not be obligated to issue further injunctive relief for a failure-to-reinitiate claim. (*Id.* 18:10–13) (citing *Cottonwood Env't L. Ctr*, 789 F.3d 1075, 1091–92 (9th Cir.

---

[7] "A statement is dictum when it is made during the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case and is therefore not precedential." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (cleaned up).

2015)).  Thus, they assert, it is premature to assume that the Biological Opinion and ITS will be struck down even if Plaintiff would succeed on its first claim. (*Id.*).

Without additional binding or persuasive precedent supporting Plaintiff's argument, the Court agrees with Defendant that the ITS would not be invalid until and unless the Court ruled that the failure-to-reinitiate claim was successful on its merits.  A review of cases involving failure-to-reinitiate claims reveals that courts regularly make a decision on the merits on a failure-to-reinitiate claim before issuing a remedy, which can include an injunction pending compliance with the ESA and vacatur of the biological opinion and ITS. *See, e.g.*, *Washington Toxics Coal. v. Env't Prot. Agency*, 413 F.3d 1024, 1035 (9th Cir. 2005) ("[T]he appropriate remedy for violations of the ESA consultation requirements is an injunction pending compliance with the ESA.") *abrogated on other grounds as recognized in Cottonwood Env't L. Ctr*, 789 F.2d at 1091–92; *Yurok Tribe v. United States Bureau of Reclamation*, 231 F.Supp.3d 450 (N.D. Cal 2017) (finding that the defendant failed to reinitiate consultation in violation of ESA Section 7 and entering a preliminary injunction pending completion of formal consultation).

A finding that the Biological Opinion and ITS were invalidated when the FWS failed to reinitiate consultation would subject those who acted in reliance on the ITP to liability under Section 9, without any warning that such liability was possible.  From a practical public policy perspective, such an outcome would greatly disincentivize future third-party cooperation and reliance on ITPs, because those who are authorized to incidentally take under an ITP could be subject to liability for actions they believed to be permitted.  And from a legal perspective, the Court is not persuaded that the Ninth Circuit's dicta in *Center for Biological Diversity* is sufficient to support Plaintiff's claim that the FWS is liable for take that has occurred since reinitiation was allegedly required.  Accordingly, the Court finds that Plaintiff's Section 9 claim does not state a plausible claim for relief, and grants Defendants' Motion to Dismiss as to

Plaintiff's second claim.  Because the Court disagrees with the basis of this claim—that the Biological Opinion and ITS are automatically invalid when reinitiation is required and not carried out—it is not possible for Plaintiff to correct the deficiency in this claim.  The Court therefore does not grant leave to amend.

### C. Claim Three: Clark County's violation of Section 9

Plaintiff brings its third claim against Clark County, asserting that it is also liable for take under Section 9. (FAC ¶¶ 93–99).  Similar to its Section 9 argument against the FWS, Plaintiff argues that the Biological Opinion and ITS are invalid because the FWS failed to reinitiate. (*Id.* ¶¶ 93–94).  It then explains that an ITP issued without compliance with Section 7 is invalid, and thus Clark County has relied on an invalid ITP when authorizing development. (*Id.* ¶¶ 96–98).  Because the ITP is invalid, Plaintiff claims that Clark County is liable for take in violation of Section 9. (*Id.* ¶ 99).

While Clark County advances several arguments as to why this claim should be dismissed, the Court does not need to reach them.  The Section 9 discussion above controls the outcome of this claim as well, because Plaintiff's claim against Clark County similarly relies on the conclusion that the Biological Opinion and ITS would be invalid retroactively to the time reinitiation was required.  As above, Plaintiff has not pled a plausible claim for relief in Claim 3. Accordingly, the Court GRANTS Clark County's Motion to Dismiss at to Claim 3 without leave to amend.[8]

///

///

///

---

[8] Because the Court dismisses the only claim against Clark County, it does not reach Clark County's second argument for dismissal for failure to include all necessary parties. (Clark County MTD 23:1–24:1).

**V.      CONCLUSION**

      **IT IS HEREBY ORDERED** that the Federal Defendants' Motion to Dismiss, (ECF No. 46), is **GRANTED, in part, and DENIED, in part.**  For Plaintiff's first claim regarding the alleged failure to reinstate consultation, the basis triggered by the 2014 legislative amendment is dismissed because it is barred by the six-year statute of limitations, while the claim stemming from the other three bases (cattle, solar, population decline) may proceed as they are not barred.  Plaintiff's second claim regarding the validity of the Biological Opinion is dismissed without leave to amend.

      **IT IS FURTHER ORDERED** that Clark County's Motion to Dismiss Plaintiff's third claim regarding a Section 9 violation (reliance upon an invalid ITP), (ECF No. 45), is **GRANTED.**

      **IT IS FURTHER ORDERED** that the Federal Defendants' Motion for Leave to File Notice of Supplemental Authority, (ECF No. 55), is **GRANTED.**

      **DATED** this __25__ day of March, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT